Ellen E. Ostrow (#14743)
eostrow@foley.com
FOLEY & LARDNER LLP
95 State Street, Suite 2500
Salt Lake City, UT  84111
Telephone:  801.401.8900

Geoffrey S. Goodman (admitted *Pro Hac Vice*)
ggoodman@foley.com
FOLEY & LARDNER LLP
321 North Clark Street, Ste. 3000
Chicago, IL 60654
Telephone:  312.832.4514

*Attorneys for Chapter 7 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**SAFEMOON US LLC,**<br><br>Debtor. | Bankruptcy Case No. 23-25749<br>Chapter 7<br><br>Honorable Joel T. Marker |

## NOTICE OF SUCCESSFUL BIDDER & CANCELLATION OF AUCTION

Ellen E. Ostrow (the "***Trustee***"), the duly-appointed trustee in the above-captioned Chapter 7 bankruptcy case (the "***Bankruptcy Case***") filed by SafeMoon US LLC (the "***Debtor***"), by and through her undersigned counsel, hereby provides notice of the successful bid for the Debtor's operating business assets, and respectfully states as follows:

1.      On March 22, 2024, this Court entered an *Order (A) Establishing Bidding Procedures Relating to Sale of the Debtor's Operating Business Assets; (B) Approving the Form and Manner of Notice of Sale; (C) Establishing Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases and Noticing and Determining Cure Amounts; (D)*

*Scheduling a Hearing to Authorize the Sale and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (E) Granting Related Relief* [Dkt. No. 90] (the "**Bidding Procedures Order**").[1]

2.      The Qualified Bid Deadline was 4:00 pm MT on April 4, 2024.  The Trustee received three Qualified Bids, including a bid from VGX Foundation ("**VGX**") and SM Asset Ventures LLC ("**SM**") and, collectively, the "**Bid**" and the "**Winning Bidders**").  Other prospective bidders sent expressions of interest, but were not Qualified Bidders.

3.      Pursuant to the Bidding Procedures Order, the Auction was originally scheduled to commence on April 8, 2024 at 10:00 a.m. MT.  In order to evaluate bids and determine if there would be competitive bidding, the Trustee rescheduled the Auction three times, ultimately to April 15, 2024 at 1:00 p.m. MT [Dkt. Nos. 138, 142, 147].

4.      The Bid consists of an aggregate bid of $500,000 from the two Winning Bidders, consisting of (a) a bid of $300,000 for the SafeMoon Wallet, DEX, intellectual property of the Debtor and certain related claims (the "**Part 1 Assets**"), and (b) a bid of $200,000 for (i) certain social media accounts and related assets (the "**Social Media Assets**") in the amount of $50,000, and (ii) the SFM v2 Tokens, SafeMoon v2 Smart Contract, SFM v1 Tokens and SFM V1 Smart Contract in the amount of $150,000 (together, the "**Token Assets**" and collectively with the Social Media Assets, the "**Part 2 Assets**").

5.      As stated above, the Bid for the Part 1 Assets and the Social Media Assets  (i.e., independent of the $150,000 offered for the Token Assets) equaled $350,000. The Qualified Bid of the second Qualified Bidder (the "**Competing Bidder**") was materially less than $350,000. The

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

4866-3221-7527.2

Competing Bidder would not increase its bid to at least $300,000.  As such, the Trustee canceled the Auction and proceeded to negotiate asset purchase agreements to effectuate the Bid.

6.      Accordingly, the Trustee has entered two asset purchase agreements with the Winning Bidders. *First*, the Trustee has entered into an Asset Purchase Agreement with VGX, a copy of which is attached hereto as **Exhibit A** (the "***Part 1 APA***"), pursuant to which the Trustee shall sell the Part 1 Assets to VGX for $300,000.

7.      *Second*, the Trustee has entered into an Asset Purchase Agreement with SM, a copy of which is attached hereto as **Exhibit B** (the "***Part 2 APA***" and, together with the Part 1 APA, the "***APAs***"), pursuant to which the Trustee shall sell the Part 2 Assets to SM for $200,000.

8.       The Trustee will request approval of (a) the Part 1 APA, and (b) the sale of the Social Media Assets under the Part 2 APA, at the Sale Hearing scheduled before the Bankruptcy Court on April 18, 2024 at 2:00 p.m. MT.

9.      Because the Objection Deadline was April 15, 2024, prior to the filing of this Notice, the Trustee submits that any party-in-interest may object to the Proposed Sale at any time up to and including at the Sale Hearing.

10.      For avoidance of doubt, the Trustee does **NOT** intend to seek approval of the sale of the Token Assets under the Part 2 APA at the Sale Hearing. The Token Assets were not part of the Bidding Procedures Order and, therefore, are not at issue at the Sale Hearing. Instead, the Trustee will file a separate motion seeking approval of a private sale of the Token Assets to VGX, and such proposed sale will be set for a later hearing on regular notice.

11.      All rights of parties-in-interest including, without limitation, the United States Securities & Exchange Commission, to object to the sale of the Token Assets will be reserved for a hearing on that proposed sale.

4866-3221-7527.2

DATED: April 18, 2024.

*/s/ Ellen E. Ostrow*
Geoffrey S. Goodman
Ellen E. Ostrow
*Attorneys for Chapter 7 Trustee*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of April 2024, a true and correct copy of the foregoing

**NOTICE OF SUCCESSFUL BIDDER & CANCELLATION OF AUCTION**, shall be served

on the parties in the manner designated below:

- **By electronic service pursuant to the Court's CM/ECF system**:

  - **Matthew James Burne**    matthew.burne@usdoj.gov,
    James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachell
    e.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
  - **Brent O. Hatch**    hatch@hatchpc.com, admin@hatchpc.com
  - **David W. Newman tr**    david.w.newman@usdoj.gov,
    James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachell
    e.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
  - **Ellen E. Ostrow**    eostrow@foley.com, ellen-ostrow-
    4512@ecf.pacerpro.com;docketflow@foley.com;acardenas@foley.com
  - **Ellen Ostrow Tr**    eostrow@foley.com,
    acardenas@foley.com;UT33@ecfcbis.com;eostrow@foley.com
  - **Mark C. Rose**    mrose@mbt-law.com, markcroselegal@gmail.com
  - **Therese Scheuer**    scheuert@sec.gov
  - **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
  - **Melinda Willden tr**    melinda.willden@usdoj.gov,
    James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachell
    e.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

In addition, a copy of this Notice will be served on all parties listed on the mailing matrix of the Debtor.

/s/ *Ellen E. Ostrow*

4866-3221-7527.2

# **Exhibit A**

4866-3221-7527.2

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is signed as of April 15, 2024 ("Signing Date") between Ellen Ostrow, solely in her capacity as the chapter 7 trustee (the "Seller") of the estate of SafeMoon US LLC (the "Debtor"), and VGX Foundation, a Cayman Island Foundation ("Buyer") (Buyer and Seller, collectively, "Parties" and each a "Party"). Capitalized terms used in this Agreement are defined in the body of this Agreement and have the meanings there indicated or are defined in Section 4.1.

Seller, as chapter 7 trustee for the Debtor, is currently in possession of a suite of Crypto/Web3 product offerings and other cryptocurrency, smart contracts, technology and other IP assets. On December 14, 2023, the Debtor filed a voluntary petition (the "Bankruptcy Case") under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court") and was assigned Case No. 23-25749. Buyer desires to purchase and assume and Seller desires to sell and transfer to Buyer the assets described in this Agreement pursuant to the Bankruptcy Court's *Order (A) Establishing Bidding Procedures Relating to Sale of the Debtor's Operating Business Assets; (B) Approving the Form and Manner of Notice of Sale; (C) Establishing Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases and Noticing and Determining Cure Amounts; (D) Scheduling a Hearing to Authorize the Sale and the Assumption and Assignment of Certain Executory Contracts; (E) Granting Related Relief* Docket No. 90 (the "Bidding Procedures Order") and Sections 363 and 365 of the Bankruptcy Code, subject to the terms and conditions of this Agreement, including Section 1.4.5.

In consideration of the terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

**1.    Sale and Purchase of Acquired Assets.**

1.1.    Acquired Assets.

1.1.1.    IP, Physical Assets, and Certain Crypto in Wallets.  Subject to the terms and conditions of this Agreement (including entry of the Sale Order), Seller agrees to sell, convey, transfer and deliver to Buyer, and Buyer agrees to purchase and acquire from Seller, free and clear, all assets identified on Schedule 1 (the "Assets").  The types and quantities of the Assets are set forth in Schedule 1.

1.1.2.    Claims.  Seller also hereby assigns, transfers, and conveys to Buyer, its successors, and assigns, all of Seller's right, title, and interest in and to any and all claims, litigations, judgments, causes of action, and rights to sue (collectively, the "Claims" and, together with the Assets, the "Acquired Assets") as set forth on Schedule 1. For avoidance of doubt, the term "Claims" being transferred to Buyer shall not include (a) any claims or causes of action under chapter 5 of the Bankruptcy Code, (b) any claims or causes of action against (i) current or former directors, officers, or employees of the Debtor, (ii) independent contractors who worked for the Debtor, or (iii) any other insiders of the Debtor (as defined in § 101(31) of the Bankruptcy Code), or (c) any claims or causes of action arising out of or related to the "hack" of the Debtor's assets, including, without limitation, claims against civil forfeiture funds or against parties that obtained access to some or all of the funds

**Asset Purchase Agreement**

misappropriated from the Debtor in the hack. Seller agrees to provide reasonable assistance to Buyer in connection with Buyer's prosecution of the Claims, including the execution of any documents or the provision of information or testimony that may be reasonably necessary for the prosecution of such Claims. Any recoveries obtained by Buyer as a result of the prosecution of the Claims will be retained by Buyer, and Seller will have no right to any portion of such recoveries. Buyer will bear all costs and expenses incurred in connection with the prosecution of the Claims.

1.1.3.    <u>Assets not Transferred</u>.  For avoidance of doubt, Seller is only transferring the Acquired Assets to Buyer and is retaining, for the benefit of the Debtor's estate, all other assets of the Debtor.

1.2.    <u>Purchase Price</u>. The aggregate purchase price for the Acquired Assets (the "<u>Purchase Price</u>") equals (a) USD $300,000, plus (b) the actual costs incurred by the Trustee in maintaining the Acquired Assets constituting intellectual property from April 1, 2024 through the date that such Acquired Assets are transferred to Buyer, provided however that such costs will not exceed $30,000. The Purchase Price will be paid to Seller in accordance with <u>Section 1.3</u>.  To the extent that Buyer does not receive any of the Acquired Assets in accordance with this Agreement, Seller will, without undue delay, refund to Buyer the portion of the Purchase Price attributable to such missing Acquired Assets based on the Purchase Price allocation set forth in <u>Schedule 1</u>.

1.3.    <u>Payment and Asset Transfer Process</u>.

1.3.1.    <u>Payment</u>. No later than the first business day after the Sale Order Date (such date, the "<u>Purchase Date</u>"), Buyer (or Buyer's designated affiliate) will pay the Purchase Price to Seller by wire transfer of immediately available funds ("<u>Wire Transfer</u>") in accordance with the wire transfer instructions set forth in <u>Schedule 2</u> and transmit to Seller a wire transfer confirmation or other bona fide evidence that the Wire Transfer has been initiated by Buyer ("<u>Wire Transfer Confirmation</u>").

1.3.2.    <u>Transfer Process for Acquired Assets</u>. Upon receipt of the Wire Transfer Confirmation, Seller will begin transferring to Buyer all Acquired Assets and will complete the transfer of all Acquired Assets within 21 days after the Purchase Date, subject to an extension of up to 10 days if Seller reasonably needs such extension ("<u>Transfer Completion Deadline</u>").

1.4.    <u>Termination</u>.

1.4.1.    <u>Failure to Transfer Purchase Price</u>.  In the event that Buyer fails to provide a Wire Transfer Confirmation in accordance with <u>Section 1.3</u> by 12:59 P.M. Pacific Time on the third business day following the Purchase Date, Seller may, upon written notice to Buyer, terminate this Agreement and will have no obligation to transfer any Acquired Assets after providing such notice.

1.4.2.    <u>Failure to Transfer Acquired Assets</u>.  Buyer may, upon notice to Seller, terminate this Agreement if Seller does not comply with the Transfer Completion Deadline as provided in <u>Section 1.3.2</u>.

1.4.3.    <u>Delay in Entry of Sale Order</u>.  Buyer may, upon notice to Seller, terminate this Agreement if the Sale Order Date does not occur by 12:59 P.M. Pacific Time on April 30, 2024.

**Asset Purchase Agreement**

4891-3174-2389.3
4891-3174-2389.4

1.4.4.  <u>Market Volatility</u>.  Neither Party may terminate or rescind this Agreement based on a change in the market value of the Acquired Assets.

1.4.5.  <u>Entry of Sale Order</u>.  The obligations of the Parties to consummate the sale of the Acquired Assets is subject to the Bankruptcy Court entering the Sale Order approving the consummation of the sale of the Acquired Assets to Buyer pursuant to Section 363 of the Bankruptcy Code and the other transactions contemplated under this Agreement in a form acceptable to Buyer in its good faith discretion. Neither Party may rely on the failure of the Bankruptcy Court to enter into such orders if such failure was primarily caused by such Party's failure to comply with any provision of this Agreement or requirements of the Bankruptcy Court.

1.4.6.  <u>No Obligation to Take Possession</u>.  Nothing in this Agreement obligates Buyer to take possession of any of the Acquired Assets, and Buyer has the right, in its sole discretion and upon notice to Seller, to refuse, abandon or otherwise dispose of any Acquired Assets in whatever manner it deems appropriate. For clarity, Buyer has no obligation to pick up, move, dispose of or otherwise take possession of any Acquired Assets. In the event that Buyer declines to take possession or otherwise abandons any Acquired Assets, ownership and responsibility for such Acquired Assets will revert to Seller and Seller will be responsible for disposing of such assets.

1.5.  <u>Effect of Termination</u>.  In the event this Agreement is terminated pursuant to <u>Section 1.4</u>, this Agreement will thereafter become void and have no effect, and neither Party will have any liability to the other Party or their respective affiliates, directors, officers or employees, except that Seller will promptly (and in no event more than 30 days after the effective date of such termination) and without the requirement of any approval by the Bankruptcy Court return the Good Faith Deposit to Buyer unless the termination is due to the Buyer's breach of this Agreement, in which case the Good Faith Deposit may be retained by the Seller.

1.6.  <u>Taxes</u>.  Buyer shall be responsible for any transfer taxes related to the Acquired Assets.  Each Party will be responsible for determining what, if any, taxes apply to their respective portion of the transaction(s) conducted under this Agreement and to further withhold, collect, report, and remit the correct taxes to the applicable tax authorities.  Seller will be responsible for all taxes of any kind or nature arising in connection with the Acquired Assets prior to the date the Acquired Assets are transferred to Buyer.  If any taxes required under this Section to be borne by Seller are assessed against Buyer or any of the Acquired Assets, Buyer will notify Seller in writing promptly thereafter, and Seller will be entitled to contest, in good faith, such assessment or charge so long as such assessment does not materially adversely affect Buyer or the Acquired Assets.

**2.**  **Representations and Warranties**.

2.1.  <u>By Buyer</u>.  Buyer represents and warrants to Seller the following:

2.1.1.  Buyer is a Cayman Island Foundation organized validly existing and in good standing under the laws of its jurisdiction of formation and has all requisite corporate power to execute and perform its obligations under this Agreement.

2.1.2.  All corporate action on the part of Buyer and its directors necessary for the authorization of this Agreement and the execution, delivery, and performance of all obligations of Buyer

**Asset Purchase Agreement**

4891-3174-2389.3
4891-3174-2389.4

DocuSign Envelope ID: 803F7FAE-95A9-476B-9717-E39472637D7C

under this Agreement has been taken or will be taken prior to the Sale Order Date and that this Agreement, when signed and delivered by Buyer, will constitute valid and binding obligations of Buyer enforceable in accordance with its terms.

      2.1.3.  Buyer has sufficient cash on hand, immediately available lines of credit or other sources of immediately available funds to enable it to make payment of all components of the Purchase Price that are or may be payable in cash and any other amounts to be paid by it hereunder and to consummate this Agreement.

      2.1.4.  There is no action, suit or proceeding pending or, to Buyer's knowledge, threatened against Buyer which questions the legality or propriety of the transactions contemplated by this Agreement or could materially adversely affect the ability of Buyer to perform its obligations hereunder.

      2.2.    <u>By Seller</u>.  Seller represents and warrants to Buyer the following:

      2.2.1.  Seller has all requisite power to execute and deliver this Agreement, to sell the Acquired Assets, and to carry out and perform its obligations hereunder.

      2.2.2.  Subject to <u>Section 1.4.5</u> herein, this Agreement, when signed and delivered by Seller, will constitute valid and binding obligations of the Seller enforceable in accordance with its terms.

      2.2.3.  Seller will on the Sale Order Date convey and transfer to Buyer, good, complete, and marketable title to all of the Acquired Assets, free and clear of all Liens, claims and interests pursuant to Section 363 of the Bankruptcy Code.

      2.2.4.  The representations and warranties in this <u>Section 2.2</u> shall expire as of the date that the Acquired Assets are transferred to Buyer.  In addition, except as expressly provided in the Sale Order, Buyer agrees and acknowledges that the transfer of the Acquired Assets is made pursuant to an order of the Bankruptcy Court and is made "as is" and "where is."

**3.**      **Jurisdiction and Exclusive Venue**.

      3.1.    <u>Governing Law; Jurisdiction</u>.  Except to the extent governed by the Bankruptcy Code, this Agreement will be governed by and be construed in accordance with the laws of the State of Utah, without regard however to the conflicts of laws principles thereof.  The Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and any and all legal proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and will receive notices in accordance with <u>Section 4.2</u>. To the extent not prohibited by applicable law or Bankruptcy Court rule, each Party waives and agrees not to assert, by way of motion, as a defense or otherwise in any such proceeding, any claim that (A) it is not subject to the jurisdiction of the Bankruptcy Court, (B) the proceeding is brought in an inconvenient forum, (C) it is immune from any legal process with respect to itself or its property, (D) the venue of the proceeding is improper or (E) this Agreement or the subject matter hereof or thereof may not be enforced in or by such court. Each Party hereby (1) irrevocably submits with regard to any such legal proceeding to the exclusive

Asset Purchase Agreement

personal jurisdiction of the Bankruptcy Court in the event any dispute arises out of this Agreement or any transaction contemplated hereby, (2) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from the Bankruptcy Court or that such action is brought in an inconvenient forum and (3) agrees that it will not bring any action relating to this Agreement or any transaction contemplated hereby in any court other than the Bankruptcy Court; provided, that, a Party may commence any action or proceeding in a court other than the Bankruptcy Court solely for the purpose of enforcing an order or judgment issued by the Bankruptcy Court. The Parties waive personal service of any and all process on each of them and consent that all such service of process will be made in the manner, to the party and at the address set forth in <u>Section 4.2</u> and service so made will be complete as stated in <u>Section 4.2</u>.

3.2.    <u>Disclaimer of Jury Trial</u>. EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**4.    Miscellaneous.**

4.1.    <u>Definitions</u>. The following terms, as used in this Agreement, will have the meanings set forth in this Section.

4.1.1.    "<u>Acquired Agreements</u>" means any Acquired Assets that are contracts, leases, permits or licenses.

4.1.2.    "<u>Good Faith Deposit</u>" has the meaning ascribed to it in the Bidding Procedures Order.

4.1.3.    "<u>Lien</u>" means with respect to any property or asset, any mortgage, assessment, equitable interest, adverse claim, assignment, charge, levy, encroachment, deed of trust, hypothecation, pledge, lien, security interest, conditional sale or other title retention agreement, restriction, lease, seizures, embargo, shareholder agreement, collateral assignment, easement, title defect, restriction of any kind, option, shareholders agreement, assignment of political rights or economic rights, right of first refusal, community property interest, attachment, encumbrance or other agreement or arrangement which has the same or similar effect to the granting of security or of any similar right of any kind (including any conditional sale or other title retention agreements).

4.1.4.    "<u>Sale Order</u>" means an order or orders of the Bankruptcy Court entered in the Bankruptcy Case (A) approving and authorizing the execution and delivery of this Agreement and the transaction contemplated in this Agreement (including approving and authorizing Seller's assumption and assignment pursuant to Section 365 of the Bankruptcy Code of the Acquired Agreements), (B) approving and authorizing the performance by Seller of its obligations under this Agreement, (C) approving and authorizing the sale of the Acquired Assets from Seller to Buyer free and clear of all Liens on the terms set forth in this Agreement, and (D) finding that Buyer is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and granting Buyer the full protections provided under the Bankruptcy Code.

4.1.5.    "<u>Sale Order Date</u>" means the day that the Bankruptcy Court enters the Sale Order.

**Asset Purchase Agreement**

4891-3174-2389.3
4891-3174-2389.4

DocuSign Envelope ID: 807F7FAE-95A9-476B-9717-E20472637D7C

4.2.    Notices; Consents and Approvals.

4.2.1.    Notices.  All notices, requests, demands and determinations under this Agreement must be in writing and will be deemed duly given (A) when delivered by hand, (B) one business day after being given to an express courier with a reliable system for tracking delivery, (C) when sent by confirmed electronic mail with a copy sent by another means specified in this Section, or (D) four business days after the day of mailing, when mailed by U.S. mail, registered or certified, return receipt requested, postage prepaid, and addressed as follows:

In the case of Seller:

> Ellen Ostrow, Trustee
> Foley & Lardner LLP
> 95 S State Street
> Suite 2500
> Salt Lake City, UT 84111
> Telephone: 385.799.7576
> Email:  eostrow@foley.com

And

> Geoffrey Goodman
> Foley & Lardner LLP
> 321 N. Clark Street
> Suite 3000
> Chicago, IL 60654
> Telephone:  312.832.4514
> Email:  ggoodman@foley.com

In the case of Buyer:

> VGX Foundation
> Attention: Legal Department
> Email: dsiemer1@gmail.com
> With a copy to: les@gridmob.com
> With another copy to: e@ericgalen.com

A Party may from time to time change its address or designee for notification purposes by giving the other Party prior notice of the new address or designee and the date upon which it will become effective.

4.3.    Access to Independent Contractors. If Buyer hires any individuals who have been engaged by Seller during the Bankruptcy Case, Buyer shall not prevent such individuals from assisting Seller in the performance of her duties as Trustee on such terms and conditions as Seller and such individuals may agree.

4.4.    Consents and Approvals.  Where agreement, approval, authorization, acceptance, consent, or similar action by either Party is required under this Agreement, such action must be in writing and,

**Asset Purchase Agreement**

4891-3174-2389.3
4891-3174-2389.4

DocuSign Envelope ID: 803F7FAE-8FA9-476B-9711-E39472637D7C

except where expressly provided as being in the sole discretion of a Party, will not be unreasonably delayed or withheld.  An approval or consent given by a Party under this Agreement will not relieve the other Party from responsibility for complying with the requirements of this Agreement, nor will it be construed as a waiver of any rights under this Agreement, except as and to the extent otherwise expressly provided in such approval or consent.

4.5.    <u>Further Assurances</u>.  Seller will, at Buyer's request and without further expense to Buyer, execute and deliver such other instruments of conveyance and transfer as Buyer may reasonably request after the date hereof in order to more effectively consummate the transactions contemplated hereby. Seller's obligations under this Section include taking all actions necessary to (A) consummate the transaction contemplated under this Agreement and (B) facilitate the novation, assignment or transfer of the Acquired Agreements to Buyer in order for Buyer to obtain the anticipated benefit of the Acquired Agreements and applicable Acquired Assets. After the Acquired Assets are transferred to Buyer, Buyer will, at Seller's request and without further expense to Seller, provide reasonable access to the Acquired Assets if such access is necessary to Seller's liquidation of an asset owned by the Debtor's estate

4.6.    <u>Entire Agreement</u>.  This Agreement contains the entire understanding of the Parties with respect to its subject matter.  This Agreement may be amended, or any provision of this Agreement may be waived, provided that any such amendment or waiver will be binding on a Party only if such amendment or waiver is set forth in a writing executed by such Party.  The waiver of a breach of any provision of this Agreement will not operate or be construed as a waiver of any other breach.

4.7.    <u>Assignment; Successors and Assigns</u>.  This Agreement may be assigned by either Party upon notice to the other Party, provided that  the assigning Party will remain liable for its assignee's performance its obligations under this Agreement, and this Agreement will be binding on and inure to the benefit of the Parties' respective successors, heirs, personal representatives, and permitted assigns.

4.8.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement.  A signed copy of this Agreement delivered by electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[Signature Page to Follow]

**Asset Purchase Agreement**

4891-3174-2389.3
4891-3174-2389.4

Authorized representatives of the Parties have executed this Agreement on the Signing Date and it will be effective as of the Sale Order Date.

**Ellen Ostrow, as Chapter 7 Trustee of SafeMoon US, LLC**

_____
Signature

_Ellen Ostrow, Trustee_
Name

**VGX Foundation**

DocuSigned by:

_____
Signature

Michael George Robinson
Name

Director
Title

DocuSign Envelope ID: 803F7FAE-9FA9-476B-9717-F39472637D7C

**Schedule 1**

**Acquired Assets**

**1.      Acquired Assets by Type.**

**1.1.**   Intellectual Property Assets.

1.1.1.   Registered Intellectual Property.  Below is a list of the registered intellectual property rights to be transferred to Buyer (e.g., patents, patent filings, registered trademarks, registered copyrights):

| Name | Description of Assets | Assigned Value |
|---|---|---|
| Orbital Shield (SOS) | US Patent #: US011831757B2 — Orbital Shield<br><br>Orbital Shield is a novel method of user credential encoding and user authentication.<br><br>This technology aims to address similar issues as Ethereum is attempting to resolve with its Account Abstraction, namely the simplification of user account and wallet generation, as well as ease of access.  Orbital Shield is technology agnostic, making it applicable to any blockchain or software with user login functionality. | $6,000 |
| | US Patent #: US11811924B1, US11824979B1<br><br>A novel method of encoding, securing, and accessing data by using elliptic curve cryptography.<br><br>This technology provides the ability to store secured operational data in a manner that can only be accessed by the authorized user and will be impervious to traditional forms of breach attempts.  The method further enhances security by eliminating the need to transmit symmetric key between parties to decrypt encoded data. | |
| SafeMoon Trademarks | All registered SafeMoon trademarks and service marks | $6,000 |

1.1.2.   Products and Software Assets.  Below is a list of the products, software platforms and systems to be transferred to Buyer (e.g., products, smartchains, SaaS platforms, Apps):

| Name | Description of Assets | Assigned Value |
|---|---|---|
| SafeMoon Wallet Tracker | | $3,000 |
| SafeMoon Wallet | dApp | $250,000 |
| SafeMoon SWaP (DEX) | Decentralized exchange that allows users to buy, sell and exchange cryptocurrency across multiple blockchains | $25,000 |

Asset Purchase Agreement

4891-3174-2389.3
4891-3174-2389.4

| | | |
|---|---|---|
| EMPATH Blockchain | Development Project – Blockchain | $2,000 |
| NFT Marketplace | | $2,000 |
| SafeMoon Bridge | | $2,000 |
| U-Mint | dApp allowing user to create NFT out of any data | $2,000 |

 

1.1.3.   <u>Other Intellectual Property Assets</u>.  Below is a list of the other intellectual property assets to be transferred to Buyer (e.g., unregistered trademarks and material trade secrets):

| Name | Description of Assets | Assigned Value |
|---|---|---|
| Trade Secrets | All trade secrets and knowhow related to the Assets | $2,000 |

1.2.   <u>Claims</u>.  The Claims are as follows:

- All claims and causes of action related to the Assets accruing after the date that the Assets are transferred to Buyer.

- All claims and causes of action related to infringement of intellectual property rights associated with the Assets.

- All claims and causes of action related to violations of trade secrets associated with the Assets.

4891-3174-2389.3
4891-3174-2389.4

DocuSign Envelope ID: 803F7FAE-9FA9-476B-9711-E39472637D7C

## Schedule 2

1.    **Wire Transfer Instructions**.    Buyer will timely remit, in immediately available funds, the full Purchase Price to Seller per the wire transfer instructions provided by Seller to Buyer.

2.    **Buyer Wallet Address**.  Seller will deliver all the Acquired Assets to Buyer at the digital wallet address specified by Buyer.

Asset Purchase Agreement

4891-3174-2389.3
4891-3174-2389.4

# **Exhibit B**

4866-3221-7527.2

**ASSET PURCHASE AGREEMENT**

This Asset Purchase Agreement ("Agreement") is signed as of April 15, 2024 ("Signing Date") between Ellen Ostrow, solely in her capacity as the chapter 7 trustee (the "Seller") of the estate of SafeMoon US LLC (the "Debtor"), and SM Asset Ventures LLC, a limited liability company organized under the laws of the Cayman Islands ("Buyer") (Buyer and Seller, collectively, "Parties" and each a "Party"). Capitalized terms used in this Agreement are defined in the body of this Agreement and have the meanings there indicated or are defined in Section 4.1.

Seller, as chapter 7 trustee for the Debtor, is currently in possession of a suite of Crypto/Web3 product offerings and other cryptocurrency, smart contracts, technology and other IP assets. On December 14, 2023, the Debtor filed a voluntary petition (the "Bankruptcy Case") under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court") and was assigned Case No. 23-25749. Buyer desires to purchase and assume and Seller desires to sell and transfer to Buyer the assets described in this Agreement pursuant to the Bankruptcy Court's *Order (A) Establishing Bidding Procedures Relating to Sale of the Debtor's Operating Business Assets; (B) Approving the Form and Manner of Notice of Sale; (C) Establishing Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases and Noticing and Determining Cure Amounts; (D) Scheduling a Hearing to Authorize the Sale and the Assumption and Assignment of Certain Executory Contracts; (E) Granting Related Relief* Docket No. 90 (the "Bidding Procedures Order") and Sections 363 and 365 of the Bankruptcy Code, subject to the terms and conditions of this Agreement, including Section 1.4.5.

In consideration of the terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

**1.      Sale and Purchase of Acquired Assets.**

1.1.   Acquired Assets.

1.1.1.   IP and Certain Crypto in Wallets.  Subject to the terms and conditions of this Agreement (including entry of the Sale Order), Seller agrees to sell, convey, transfer and deliver to Buyer, and Buyer agrees to purchase and acquire from Seller, free and clear, all assets identified on Schedule 1 (the "Initial Assets"). The types and quantities of the Initial Assets are set forth in Schedule 1. With respect to Social Media accounts set forth on Schedule 1 in Section 1.3, Seller shall transfer all credentials and rights it possesses or controls with respect to the Social Media accounts. Seller will take all operational steps necessary to transfer control/ownership of the Social Media accounts to Buyer. Buyer acknowledges that Seller does not have ownership rights over Discord and Reddit and that all it may be able to transfer is goodwill related to those platforms.

1.1.2.   Claims.  Seller also hereby assigns, transfers, and conveys to Buyer, its successors, and assigns, all of Seller's right, title, and interest in and to any and all claims, litigations, judgments, causes of action, and rights to sue (collectively, the "Claims") as set forth on Schedule 1. For avoidance of doubt, the term "Claims" being transferred to Buyer shall not include (a) any claims or causes of action under chapter 5 of the Bankruptcy Code, (b) any claims or causes of action against (i) current or former directors, officers, or employees of

the Debtor, (ii) independent contractors who worked for the Debtor, or (iii) any other insiders of the Debtor (as defined in § 101(31) of the Bankruptcy Code), or (c) any claims or causes of action arising out of or related to the "hack" of the Debtor's assets, including, without limitation, claims against civil forfeiture funds or against parties that obtained access to some or all of the funds misappropriated from the Debtor in the hack. Seller agrees to provide reasonable assistance to Buyer in connection with Buyer's prosecution of the Claims, including the execution of any documents or the provision of information or testimony that may be reasonably necessary for the prosecution of such Claims. Any recoveries obtained by Buyer as a result of the prosecution of the Claims will be retained by Buyer, and Seller will have no right to any portion of such recoveries. Buyer will bear all costs and expenses incurred in connection with the prosecution of the Claims.

    1.1.3.   <u>Deferred Assets</u>.  Seller also assigns, transfers and conveys to Buyer free and clear, all assets set forth on <u>Schedule 3</u> hereto (the "<u>Deferred Assets</u>" and, together with the Initial Assets and the Claims, the "<u>Acquired Assets</u>"); <u>provided</u>, <u>however</u>, that Seller shall not convey the Deferred Assets to Buyer until August 1, 2025 (the "<u>Deferred Assets Closing</u>"); <u>and</u>, <u>provided further that</u>, from the date hereof until the Deferred Assets Closing, Seller shall not mint any tokens constituting Deferred Assets.

    1.1.4.   <u>Assets not Transferred</u>.  For avoidance of doubt, Seller is only transferring the Acquired Assets to Buyer and is retaining, for the benefit of the Debtor's estate, all other assets of the Debtor.

1.2.    <u>Purchase Price</u>. The aggregate purchase price for the Acquired Assets (the "<u>Purchase Price</u>") equals USD $200,000, plus the fees incurred by Seller in defending against an objection to the transfer of the SFM v2 tokens, SafeMoon v2 Smart Contracts and Deferred Assets, up to a maximum of $10,000. The Purchase Price will be paid to Seller in accordance with <u>Section 1.3</u>.  To the extent that Buyer does not receive any of the Acquired Assets in accordance with this Agreement, Seller will, without undue delay, refund to Buyer the portion of the Purchase Price attributable to such missing Acquired Assets based on the Purchase Price allocation set forth in <u>Schedule 1</u>.

1.3.    <u>Payment and Asset Transfer Process</u>.

    1.3.1.   <u>Payment</u>.  No later than the first business day after the Sale Order Date (such date, the "<u>Purchase Date</u>"), Buyer (or Buyer's designated affiliate) will pay the portion of the Purchase Price based on the "Assigned Value" of the Initial Assets (as specified on Schedule 1) to Seller by wire transfer ("<u>Wire Transfer</u>") of immediately available funds in accordance with the wire transfer instructions set forth in <u>Schedule 2</u> and transmit to Seller a wire transfer confirmation or other bona fide evidence that the Wire Transfer has been initiated by Buyer ("<u>Wire Transfer Confirmation</u>").  Upon completion of the transfer of all Deferred Assets, Buyer (or Buyer's designated affiliate) will pay the portion of the Purchase Price based on the "Assigned Value" of the Deferred Assets (as specified on <u>Schedule 3</u>) to Seller by Wire Transfer of immediately available funds in accordance with the wire transfer instructions provided by Seller to Buyer.

    1.3.2.   Upon receipt of the Wire Transfer Confirmation, Seller will begin transferring to Buyer all Initial Assets and will complete the transfer of all Initial Assets within 21 days after the Purchase Date, subject to an extension of up to 10 days if Seller reasonably needs such extension ("<u>Transfer Completion Deadline</u>").  All Deferred Assets will be transferred to Buyer by Seller in accordance with <u>Section 1.1.3</u>.

**Asset Purchase Agreement**

### 1.4. Termination.

1.4.1. **Failure to Transfer Purchase Price.** In the event that Buyer fails to provide a Wire Transfer Confirmation in accordance with Section 1.3 by 12:59 P.M. Pacific Time on the third business day following the Purchase Date, Seller may, upon written notice to Buyer, terminate this Agreement and will have no obligation to transfer any Acquired Assets after providing such notice.

1.4.2. **Failure to Transfer Acquired Assets.** Buyer may, upon notice to Seller, terminate this Agreement if Seller does not complete the transfer of all Acquired Assets by the Transfer Completion Deadline or Deferred Assets Closing date in accordance with Section 1.1.3 and Section 1.3, respectively.

1.4.3. **Delay in Entry of Sale Order.** Buyer may, upon notice to Seller, terminate this Agreement if the Sale Order Date does not occur by 12:59 P.M. Pacific Time on April 30, 2024.

1.4.4. **Market Volatility.** Neither Party may terminate or rescind this Agreement based on a change in the market value of the Acquired Assets.

1.4.5. **Entry of Sale Order.** The obligations of the Parties to consummate the sale of the Acquired Assets is subject to the Bankruptcy Court entering the Sale Order approving the consummation of the sale of the Acquired Assets to Buyer pursuant to Section 363 of the Bankruptcy Code and the other transactions contemplated under this Agreement in a form acceptable to Buyer in its good faith discretion. Neither Party may rely on the failure of the Bankruptcy Court to enter into such orders if such failure was primarily caused by such Party's failure to comply with any provision of this Agreement or requirements of the Bankruptcy Court. The Parties acknowledge that the Sale Order may be entered in two parts, with (a) the first part being the transfer of all Acquired Assets other than the SFM2 tokens, SafeMoon v2 Smart Contracts and the Deferred Assets, and (b) the second part being the SFM2 tokens, SafeMoon v2 Smart Contracts and Deferred Assets. If the Sale Order is entered in two parts, the Purchase Price allocated to the Acquired Assets under the first part of the Sale Order will be payable in accordance with Section 1.3 based on the date of the first part of the Sale Order, and the Purchase Price allocated to the remaining Acquired Assets will be payable in accordance with Section 1.3 based on the date of the second part of the Sale Order, provided that the Deferred Assets will be transferred to Buyer by Seller in accordance with Section 1.1.3.

1.4.6. **No Obligation to Take Possession.** Nothing in this Agreement obligates Buyer to take possession of any of the Acquired Assets, and Buyer has the right, in its sole discretion and upon notice to Seller, to refuse, abandon or otherwise dispose of any Acquired Assets in whatever manner it deems appropriate. For clarity, Buyer has no obligation to pick up, move, dispose of or otherwise take possession of any Acquired Assets. In the event that Buyer declines to take possession or otherwise abandons any Acquired Assets, ownership and responsibility for such Acquired Assets will revert to Seller and Seller will be responsible for disposing of such assets.

### 1.5. Effect of Termination.

In the event this Agreement is terminated pursuant to Section 1.4, this Agreement will thereafter become void and have no effect, and neither Party will have any liability to the other Party or their respective affiliates, directors, officers or employees, except that Seller will promptly (and in no event more than 30 days after the effective date of such termination) and without the requirement of any approval by the Bankruptcy Court return the Good Faith Deposit to Buyer unless the termination is due to the Buyer's breach of this Agreement, in which case the Good Faith Deposit may be retained by the Seller.

1.6.    Taxes.  Buyer shall be responsible for any transfer taxes related to the Acquired Assets.  Each Party will be responsible for determining what, if any, taxes apply to their respective portion of the transaction(s) conducted under this Agreement and to further withhold, collect, report, and remit the correct taxes to the applicable tax authorities.  Seller will be responsible for all taxes of any kind or nature arising in connection with the Acquired Assets prior to the date such Acquired Assets are transferred to Buyer.  If any taxes required under this Section to be borne by Seller are assessed against Buyer or any of the Acquired Assets, Buyer will notify Seller in writing promptly thereafter, and Seller will be entitled to contest, in good faith, such assessment or charge so long as such assessment does not materially adversely affect Buyer or the Acquired Assets.

2.    **Representations and Warranties**.

2.1.    By Buyer.    Buyer represents and warrants to Seller the following:

2.1.1.    Buyer is a limited liability company organized validly existing and in good standing under the laws of its jurisdiction of formation and has all requisite corporate power to execute and perform its obligations under this Agreement.

2.1.2.    All corporate action on the part of Buyer and its directors necessary for the authorization of this Agreement and the execution, delivery, and performance of all obligations of Buyer under this Agreement has been taken or will be taken prior to the Sale Order Date and that this Agreement, when signed and delivered by Buyer, will constitute valid and binding obligations of Buyer enforceable in accordance with its terms.

2.1.3.    Buyer has sufficient cash on hand, immediately available lines of credit or other sources of immediately available funds to enable it to make payment of all components of the Purchase Price that are or may be payable in cash and any other amounts to be paid by it hereunder and to consummate this Agreement.

2.1.4.    There is no action, suit or proceeding pending or, to Buyer's knowledge, threatened against Buyer which questions the legality or propriety of the transactions contemplated by this Agreement or could materially adversely affect the ability of Buyer to perform its obligations hereunder.

2.2.    By Seller.  Seller represents and warrants to Buyer the following:

2.2.1.    Seller has all requisite power to execute and deliver this Agreement, to sell the Acquired Assets, and to carry out and perform its obligations hereunder.

2.2.2.    Subject to Section 1.4.5 herein, this Agreement, when signed and delivered by Seller, will constitute valid and binding obligations of the Seller enforceable in accordance with its terms.

2.2.3.    Seller will on the Sale Order Date convey and transfer to Buyer, good, complete, and marketable title to all of the Acquired Assets, free and clear of all Liens, claims and interests pursuant to Section 363 of the Bankruptcy Code.

2.2.4.    The representations and warranties in this Section 2.2 shall expire as of the closing of the sale of the Acquired Assets.  In addition, except as expressly provided in the Sale Order, Buyer agrees

**Asset Purchase Agreement**

4880-0357-1637.4

DocuSign Envelope ID: 8E39F8C6-B503-4FAF-9722-84C4D5FA938D

and acknowledges that the transfer of the Acquired Assets is made pursuant to an order of the Bankruptcy Court and is made "as is" and "where is."

**3.      Jurisdiction and Exclusive Venue**.

3.1.      <u>Governing Law; Jurisdiction</u>.  Except to the extent governed by the Bankruptcy Code, this Agreement will be governed by and be construed in accordance with the laws of the State of Utah, without regard however to the conflicts of laws principles thereof.  The Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and any and all legal proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and will receive notices in accordance with <u>Section 4.2</u>. To the extent not prohibited by applicable law or Bankruptcy Court rule, each Party waives and agrees not to assert, by way of motion, as a defense or otherwise in any such proceeding, any claim that (A) it is not subject to the jurisdiction of the Bankruptcy Court, (B) the proceeding is brought in an inconvenient forum, (C) it is immune from any legal process with respect to itself or its property, (D) the venue of the proceeding is improper or (E) this Agreement or the subject matter hereof or thereof may not be enforced in or by such court.  Each Party hereby (1) irrevocably submits with regard to any such legal proceeding to the exclusive personal jurisdiction of the Bankruptcy Court in the event any dispute arises out of this Agreement or any transaction contemplated hereby, (2) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from the Bankruptcy Court or that such action is brought in an inconvenient forum and (3) agrees that it will not bring any action relating to this Agreement or any transaction contemplated hereby in any court other than the Bankruptcy Court; provided, that, a Party may commence any action or proceeding in a court other than the Bankruptcy Court solely for the purpose of enforcing an order or judgment issued by the Bankruptcy Court.  The Parties waive personal service of any and all process on each of them and consent that all such service of process will be made in the manner, to the party and at the address set forth in <u>Section 4.2</u> and service so made will be complete as stated in <u>Section 4.2</u>.

3.2.      <u>Disclaimer of Jury Trial</u>.  EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**4.      Miscellaneous.**

4.1.      <u>Definitions</u>.  The following terms, as used in this Agreement, will have the meanings set forth in this Section.

4.1.1.      "<u>Acquired Agreements</u>" means any Acquired Assets that are contracts, leases, permits or licenses.

4.1.2.      "<u>Good Faith Deposit</u>" has the meaning ascribed to it in the Bidding Procedures Order.

4.1.3.      "<u>Lien</u>" means with respect to any property or asset, any mortgage, assessment, equitable interest, adverse claim, assignment, charge, levy, encroachment, deed of trust, hypothecation,

DocuSign Envelope ID: 8E30F8C6-8E03-4FAF-9722-84C4D2FA938D

pledge, lien, security interest, conditional sale or other title retention agreement, restriction, lease, seizures, embargo, shareholder agreement, collateral assignment, easement, title defect, restriction of any kind, option, shareholders agreement, assignment of political rights or economic rights, right of first refusal, community property interest, attachment, encumbrance or other agreement or arrangement which has the same or similar effect to the granting of security or of any similar right of any kind (including any conditional sale or other title retention agreements).

4.1.4. "Sale Order" means an order or orders of the Bankruptcy Court entered in the Bankruptcy Case (A) approving and authorizing the execution and delivery of this Agreement and the transaction contemplated in this Agreement (including approving and authorizing Seller's assumption and assignment pursuant to Section 365 of the Bankruptcy Code of the Acquired Agreements), (B) approving and authorizing the performance by Seller of its obligations under this Agreement, (C) approving and authorizing the sale of the Acquired Assets from Seller to Buyer free and clear of all Liens on the terms set forth in this Agreement, and (D) finding that Buyer is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and granting Buyer the full protections provided under the Bankruptcy Code.

4.1.5. "Sale Order Date" means the day that the Bankruptcy Court enters the Sale Order.

4.2. Notices; Consents and Approvals.

4.2.1. Notices. All notices, requests, demands and determinations under this Agreement must be in writing and will be deemed duly given (A) when delivered by hand, (B) one business day after being given to an express courier with a reliable system for tracking delivery, (C) when sent by confirmed electronic mail with a copy sent by another means specified in this Section, or (D) four business days after the day of mailing, when mailed by U.S. mail, registered or certified, return receipt requested, postage prepaid, and addressed as follows:

In the case of Seller:

Ellen Ostrow, Trustee
Foley & Lardner LLP
95 S State Street
Suite 2500
Salt Lake City, UT 84111
Telephone: 385.799.7576
Email: eostrow@foley.com

And

Geoffrey Goodman
Foley & Lardner LLP
321 N. Clark Street
Suite 3000
Chicago, IL 60654
Telephone: 312.832.4514
Email: ggoodman@foley.com

Asset Purchase Agreement

In the case of Buyer:

SM Asset Ventures LLC
Attention: Legal Department
Email: dsiemer1@gmail.com
With a copy to: les@gridmob.com
With another copy to: e@ericgalen.com

A Party may from time to time change its address or designee for notification purposes by giving the other Party prior notice of the new address or designee and the date upon which it will become effective.

    4.3.    <u>Access to Independent Contractors</u>.  If Buyer hires any individuals who have been engaged by Seller during the Bankruptcy Case, Buyer shall not prevent such individuals from assisting Seller in the performance of her duties as Trustee on such terms and conditions as Seller and such individuals may agree.

    4.4.    <u>Social Media Account Access</u>.  With respect to Social Media accounts set forth on Schedule 1.3, from the closing of the sale of the Acquired Assets until December 31, 2024, Seller shall have the right to use such Social Media accounts, solely for the posting of notices filed in the Bankruptcy Case, upon two-days advance notice to Buyer.

    4.5.    <u>Consents and Approvals</u>.  Where agreement, approval, authorization, acceptance, consent, or similar action by either Party is required under this Agreement, such action must be in writing and, except where expressly provided as being in the sole discretion of a Party, will not be unreasonably delayed or withheld.  An approval or consent given by a Party under this Agreement will not relieve the other Party from responsibility for complying with the requirements of this Agreement, nor will it be construed as a waiver of any rights under this Agreement, except as and to the extent otherwise expressly provided in such approval or consent.

    4.6.    <u>Further Assurances</u>.  Seller will, at Buyer's request and without further expense to Buyer, execute and deliver such other instruments of conveyance and transfer as Buyer may reasonably request after the date hereof in order to more effectively consummate the transactions contemplated hereby. Seller's obligations under this Section include taking all actions necessary to (A) consummate the transaction contemplated under this Agreement and (B) facilitate the novation, assignment or transfer of the Acquired Agreements to Buyer in order for Buyer to obtain the anticipated benefit of the Acquired Agreements and applicable Acquired Assets.  After closing of the sale of the Acquired Assets, Buyer will, at Seller's request and without further expense to Seller, provide reasonable access to the Acquired Assets if such access is necessary to Seller's liquidation of an asset owned by the Debtor's estate.

    4.7.    <u>Entire Agreement</u>.  This Agreement contains the entire understanding of the Parties with respect to its subject matter.  This Agreement may be amended, or any provision of this Agreement may be waived, provided that any such amendment or waiver will be binding on a Party only if such amendment or waiver is set forth in a writing executed by such Party.  The waiver of a breach of any provision of this Agreement will not operate or be construed as a waiver of any other breach.

    4.8.    <u>Assignment; Successors and Assigns</u>.  This Agreement may be assigned by either Party upon notice to the other Party, provided that the assigning Party will remain liable for its assignee's performance its obligations under this Agreement, and this Agreement will be binding on and inure to the benefit of the

**Asset Purchase Agreement**

4880-0357-1637.4

DocuSign Envelope ID: 8E39F8CC-8E03-4FAF-9722-84C4D2EA938D

Parties' respective successors, heirs, personal representatives, and permitted assigns.

      4.9.   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement.  A signed copy of this Agreement delivered by electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[Signature Page to Follow]

**Asset Purchase Agreement**

4880-0357-1637.4

Authorized representatives of the Parties have executed this Agreement on the Signing Date and it will be effective as of the Sale Order Date.

| **Ellen Ostrow, as Chapter 7 Trustee of SafeMoon US, LLC** | **SM Asset Ventures LLC** |
|---|---|
| | DocuSigned by: |
| _____ | _____ |
| Signature | D0AEAF413F114BF... |
| | Signature |
| _Ellen Ostrow, Trustee_ | Eric Galen |
| Name | Name |
| | Managing Member |
| | Title |

**Schedule 1**

**Initial Assets**

1.    **Acquired Assets by Type.**

1.1.    <u>SafeMoon Digital Assets</u>.

| Description of Assets | Digital Wallet Addresses | Quantity | Assigned Value |
|---|---|---|---|
| All SFM v2 Tokens held in treasury | ███████████████████████ | Ethereum: 998,774,950,009.113<br><br>Polygon: 996,321,969,956.715<br><br>BSC: 183,037,697,998.656 | $50,000 |

1.2.    <u>Products and Software Assets</u>.  Below is a list of the products, software platforms and systems to be transferred to Buyer (e.g., products, smartchains, SaaS platforms, Apps):

| Name | Digital Addresses | Assigned Value |
|---|---|---|
| SafeMoon v2 Smart Contract | ███████████████████████<br>███████████████████████<br>███████████████████████ | $25,000 |

1.3.    <u>Other Intangible Assets</u>.  Below is a list of Intangible Assets (other than intellectual property) to be transferred to Buyer (e.g., domain names, licenses, permits, wallets, data, customer lists, goodwill, and social media accounts):

| Name | Description of Assets | Assigned Value |
|---|---|---|
| SafeMoon Social Media Accounts | All SafeMoon X (Twitter) accounts<br>All SafeMoon Reddit accounts (Community Owned)<br>All SafeMoon Discord accounts (Community Owned)<br>All SafeMoon Telegram accounts<br>All SafeMoon Instagram accounts<br>All SafeMoon Facebook accounts<br>All SafeMoon Twitch accounts<br>All SafeMoon LinkedIn accounts | Twitter - $40,000<br><br>$1,000 for each of the other 7 social media account |
| SafeMoon Domain Name | SafeMoon.com domain name | $3,000 |

Asset Purchase Agreement

4880-0357-1637.4

DocuSign Envelope ID: 8E39F8CC-8E03-4FAF-9722-54C4D5EA938F

1.4.    <u>Claims</u>.  The Claims are as follows:

- All claims and causes of action related to the Assets accruing after the closing date.

- All claims and causes of action related to infringement of intellectual property rights associated with the Assets.

- All claims and causes of action related to violations of trade secrets associated with the Assets.

**Asset Purchase Agreement**

4880-0357-1637.4

DocuSign Envelope ID: 8E39F3CC-9E93-4FAF-9722-34C4D2EA938D

## Schedule 2

1.    **Wire Transfer Instructions**.     Buyer will timely remit, in immediately available funds, the full Purchase Price to Seller per the wire transfer instructions provided by Seller to Buyer.

2.    **Buyer Wallet Address**.  Seller will deliver all the Acquired Assets to Buyer at the digital wallet address specified by Buyer.

Asset Purchase Agreement

4880-0357-1637.4

DocuSign Envelope ID: 8E30F8CC-8E03-4FAF-9722-34C4D2EA938F

**Schedule 3**
**Deferred Assets**

| Description of Assets | Location | Assigned Value |
|---|---|---|
| All SFM v1 Tokens held in treasury | All digital wallets holding SFM v1 Tokens owned or controlled by Debtor / Seller | $50,000 |
| SafeMoon v1 Smart Contract | ████████████████████████ | $25,000 |

Asset Purchase Agreement

Page 13